Mr. Justice Smith,
delivered the following opinion.
An execution was issued from the circuit court of Monroe county, and levied on a slave as the property of John Allen, who *612 was the defendant in said execution. George Allen, the brother and next friend of Susan Allen, a minor, claimed the said slave for her, and gave bond in conformity with the requisitions of the statute, for the trial of the right of property; and the issue joined upon this proceeding having been decided in favor of the claimants, John Fisher, the plaintiff in execution, has removed the case by writ of error, into this court. The facts of the case appear to be, that the claimant of property asserted title to it under a donation by deed, executed on the 14th day of November, 1839; and also by virtue of a parol gift made long anterior to that period, by Betsy Love, who was mother of the donor, and wife of the defendant in execution. Allen and Betsy Love were inhabitants of the Chickasaw territory; and the relation of husband and wife, existing between them, arose under the tribal customs, of the Chickasaws. ’
In the year 1839, the limits or jurisdiction of Monroe county was extended; over that portion of the Chickasaw territory in which Allen and wife resided, and the property which is here the subject of contest remained in the possession of the latter down to the time of the levy.
In August, 1830, John Allen became indebted to Fisher, and the deed'of gift before adverted to was recorded in the county of Monroe, on the 3d November of the same year.
Two questions are brought to'the consideration of the court. 1. Whether, under the laws of this state,-Allen, by his marriage with Betsy Love, acquired such an interest in her property, as to subject it to the claims of his creditors.
3. Whether the gift to Susan Allen was void, as to persons having claims against Allen.
By the customs of the Chickasaws, the husband acquired no right to the property of the wife which she possessed at the time of marriage. It reihaiued to her separate use and subject alone to her disposition and constraint. She was, so far as it regards the obligation of contracts, the acquisition and rights of property, perfectly independent of the husband. No community of interest was produced by the marriage contract, with respect either to the original property of the parties, or ■ to the' acquests and gains *613 •during its continuance, and to the wife was confided exclusively, the custody and the nurture of her children.
The slave Toney, who had been levied upon to satisfy Fisher’s demand against Allen, was proved to be the separate property of Betsy Love, at the time of the .donation; and from what-has been stated of the rights which arise to the husband under the laws and customs of the Chickasaws, it is obvious that no title to this slave vested in Allen, which could subject him to the claims of Allen’s creditors. But it is contended that the juris-, diction of the state attached to every individual within its limits] and that consequently, the- marriage contract, whether between Indians or the -white inhabitants, would be controlled by its laws. And that the jurisdiction commenced in 1799, immediately upon the organisation of the territorial government.
It does not appear that the marriage between Allen and Betsy Love took place under the territorial government; it is therefore unnecessary to inquire whether congress was vested with the power to subject the individuals composing the Chickasaw nation, within the limits of their territory, to the legislature of the territory of Mississippi, or whether such a right hr fact, was attempted to be exercised.
But upon the admission of Mississippi into the Union she became clothed with the attributes, and was vested with the power of sovereignty, and could exercise every right which attaches to that character, except where she was restrained by the compact of union. As a necessary consequence of this position she had a right to enforce the obedience of every inhabitant of her territory. This right, however, was never enforced with the individuals composing the different tribes of Indians within her limits, until 1830, when the legislature abolished the tribal character of the Choctaws and Chickasaws, conferred upon them as far as was permitted by the constitution of the state, the rights of citizenship, and subjected them fully in person and property to the operation of our laws. By the 4th section of this act it is provided “ That all marriages and matrimonial connections entered into by virtue of any custom or usage of the said Indians, and by them deemed valid, should be held as valid and obligatory as if the same had *614 been solemnised according to the laws of the state. Acts of January session, 1830, page 6.
The marriage of Allen and Betsy Love is therefore valid, and the rights of the parties under it must be enforced.
The act necessarily refers to the state of the marriages or matrimonial associations then existing among the Indians, and they must be considered as equally valid at their commencement as at the passage of the law. The law. of the place where contracts are entered into forms part of their essence. The terms of the marriage contract between Allen and Betsy Love, as modified by the customs of the Chickasaws, conferred no right on him to the separate property of his wife, and no just construction can be given to the act validating their marriages, which would alter their condition or extend the marital rights of the husband.
In fact, such a construction would bring the case in conflict with the constitution; for if Allen, by the marriage, acquired no interest in the property of his wife, the property was hers at the passage of the law; and to give it such an interpretation as would confer upon him the ownership, would work a divesture of her rights. It was the intention of the legislature to extend to these persons the full protection of the law; they were made members of the civil community. It was not the intention of the legislature, nor could they, if they had so intended, violate the sanctity of private property.
The property of Betsy Love was, therefore, not subject to the demands of Allen’s creditors.
From this view of the subject we are bound to affirm the judgment of the circuit court, and it becomes, therefore, unnecessary to investigate the second point raised on the argument of this court.
Mr. Chief Justice Shahkey
delivered the opinion of the coitrt.
An execution from the circuit court of Munroe county, against the goods and chattels of James Allen in favor of the plaintiff, was levied by the sheriff on a negro boy, Avho was claimed by Susan A. Allen according to the provision of the statute. On the trial of the issue directed by the circuit court, a verdict was found *615 foi the claimant. The evidence given on the trial is contained in a bill of exceptions, and the cause comes to this court by writ of error. The evidence shows that the claimant, and her mother, and the family are Indians of the Chickasaw tribe, resident in the country belonging to or occupied by that tribe. That the property in question was claimed by virtue of a deed of gift executed by the mother of the claimant, by which she gave separate property to ten of her children, giving to the claimant the property claimed. The deed was executed in November, 1829. That although Betsy Love, alias Betsy Allen, was, according to the Indian customs, the wife of James Allen, the defendant in execution, yet according to their laws, she had a right to own separate property, to dispose of it at pleasure, to create debts and in most things act as a feme sole.
It also appeared that the property disposed of by the deed of gift was the separate property of the wife, having belonged to her before marriage. The possession of the property claimed, remained with the- mother until the time of the creation of the debt sought to be collected, which was in August, 1830. That the claimant was an infant. The counsel for the plaintiff requested the court to charge the jury, that as the deed by which the property was claimed was not recorded within three months after the extension of our laws over the Indians, it was void against the creditors of James Allen, and the court refused it.
The first point deemed necessary to consider is on the charge requested of the court on the law requiring certain instruments to be recorded. The laws of this state were extended over the Indians in January, 1830, and the deed of gift was executed on the 14th of November, 1829. There does not seem to be any defect in the gift in its inception; the individual who made it, by the tribal customs, had an undoubted right to the property bestowed, and an 'equal right to make the gift, and did actually make it to her daughter. We cannot well conceive how a law not in force until after the gift was complete, could affect the rights of parties vested by the deed. The statute of 1830, although it repeals and abolishes the tribal laws and customs, *616 cannot be construed to extend so far as to interfere with the rights to property previously acquired.
Indeed the statute seems rather to recognise and confirm the Indians in the enjoyment of whatever rights of this kind that had accrued by their customs. If the laws of this state were always in force over that part of the state occupied by the Indians, which is a position contended for by some, yet it might be a matter of great doubt whether the marriage between James Allen and Betsy Allen could be considered as a valid one; and even if it were so, it might be questionable whether it would necessarily carry with it in full force, all the conditions, consequences and incidents under which it was entered into, one of which seems to be by marriage, the property of the wife does not vest in the husband, but remains subject to her own disposal. If so the gift would still be good and effectual.
It is urged that the property given remaining in possession of the mother, was evidence of fraud. There does not seem to have been any claims existing against Betsy Allen at the time of making the gift nor at any time afterwards, and it is shown that the creditors of James Allen could have no claim on it, even if these debts had existed at the time of making the gift; but it does not appear that any such debts existed at the time.
There does not, therefore, seem to have been any motive for committing a fraud, and to decide that the possession amounted to fraud and vitiated the gift, would be to decide that a given state of facts would amount to fraud, without such intention in the parties, and under a state of things when no one could be prejudiced, and no one take advantage of it.
The appearance of the defendant by attorney, being an infant, is assigned as error. If this were error, it is amply provided for in the Revised Code, p. 134, sec. 91. It cannot now be noticed, unless the objection had been properly taken below. The informality in entering the verdict of the jury, is not deemed sufficient cause of error. Indeed it was partially abandoned in the argument.
The judgment of the court below must be affirmed.